```
           IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                    FORT SMITH DIVISION

MICHAEL J. CONVILLE,                                   PLAINTIFF

v.                        CASE No. 11-2246

SECRETARY ARNE DUNCAN
U.S. DEPARTMENT OF EDUCATION                           DEFENDANT
```

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael J. Conville seeks judicial review of an administrative decision made by the Department of Education ("the Department"), and the discharge of his federally guaranteed student loans. Currently before the Court are Plaintiff's Motion for Summary Judgment (Doc. 16) and Defendant's Response/Cross Motion for Summary Judgment (Doc. 18), Memorandum in Support (Doc. 19) and Statement of Undisputed Facts (Doc. 20). For the reasons set out below Plaintiff's Motion for Summary Judgment (Doc. 16) is **DENIED** and Defendant's Motion for Summary Judgment (Doc. 18) is **GRANTED.** Accordingly, Plaintiff's Complaint (Doc. 2) is **DISMISSED WITH PREJUDICE.**

### I.   Background

Between 1976 and 1978, Plaintiff obtained five federally guaranteed loans in the amount of $22,500.00 to attend Catholic University of America. (Admin. Rec. P. 23). Upon completion of his course of study, Plaintiff was unable to find a job or to repay his student loan debt. (Doc. 2).

Page 1 of 12

On September 9, 1983, Plaintiff applied to UNIPAC[1], the servicer of his loans, for forbearance from September 1, 1983, through February 1, 1984. He asserted that he was looking for work in his field but was currently unable to meet his monthly payments due to low income caused by temporary unemployment. The request was approved on September 12, 1983. (Admin. Rec. P. 5).

On March 28, 1984, Plaintiff applied to UNIPAC for forbearance from March 1, 1984 through June 1, 1984, citing his inability to meet his monthly payment. The request was approved on April 2, 1984. (Doc. 2, Ex. E).

On June 26, 1984, Plaintiff wrote to UNIPAC that he would be unable to begin repaying his loan on July 1, 1984. He stated that his income was still at a level which made it impossible to begin repayment. "Unless some other arrangements can be made, it appears that my only recourse will be to enter default status. If you have any suggestions, please contact me." (Doc. 2, Ex. F). On July 2, 1984, UNIPAC informed Plaintiff that it was unable to offer any further assistance on his account in addition to the previous ten months of forbearance. (Doc. 2, Ex. G.).

---

[1] UNIPAC loan Service Corporation was founded in 1978 and renamed Nelnet in 1996.
Nelnet Investors, http://www.nelnetinvestors.com/faq.cfm (last visited May 14, 2012).

On September 7, 1984, Plaintiff applied to UNIPAC for forbearance for the period of July 1, 1984, through December 1, 1984, explaining that given his monthly budget, he was unable to meet his monthly payment at that time. (Doc. 2, Ex. I). By letter dated September 26, 1984, UNIPAC informed Plaintiff that his request for forbearance was denied and that he would receive no further extensions on his loan. At this time the loans were deemed "delinquent." (Doc. 2, Ex. J).

On October 3, 1984, UNIPAC notified Plaintiff that it was accelerating his loans. UNIPAC demanded payment of the entire amount of the notes plus interest ($22,707.86) within thirty days. (Admin. Rec. P. 20). After receiving no payment, UNIPAC declared the loans in default as of November 1, 1984, and applied to the Federal Insured Student Loan Program for payment of the insurance claim. (Doc. 2, Ex. K).

On March 21, 1985, Plaintiff wrote to the Department of Education, encouraging it to "please feel free to make any suggestions which outline a repayment plan that is compatible with my unemployed status." (Doc. 2, Ex. N).

The next entry in the administrative record is the Department's response to Plaintiff's request for review of his account, dated January 13, 2004. In its response, the Department advised Plaintiff that the amount needed to satisfy the outstanding balance on his account was $59,770.95, including

principal, interest, fees and collection costs. The Department advised Plaintiff that it could not cancel or reduce his loans and that his account had been turned over to a collection agency. (Doc. 2, Ex. O).

On February 19, 2004, the Department responded to Plaintiff's dispute of the interest and fees that had been added to his account, explaining that they were authorized by statute. The Department noted, "Your financial situation makes it difficult for you to repay this debt" and referred Plaintiff to the collection agency for additional information. (Doc. 2, Ex. P).

In April, 2006, Plaintiff requested his administrative record from the Department. (Admin. Rec. P. 6). In June, 2008, Plaintiff received a "Notice of Proposed Treasury Offset[2]." On August 21, 2008, Plaintiff wrote to the Department alleging that its decision to declare his loans in default was not consistent

---

[2] The Treasury Offset Program is a centralized offset program, administered by the Financial Management Service's (FMS) Debt Management Services (DMS), to collect delinquent debts owed to federal agencies and states, in accordance with 26 U.S.C. § 6402(d) (collection of debts owed to federal agencies), 31 U.S.C. § 3720A (reduction of tax refund by amount of the debts), and other applicable laws. FMS disburses federal payments, such as federal tax refunds, for agencies making federal payments (known as "payment agencies"), such as the Internal Revenue Service. "Creditor agencies," such as the Department of Education, submit delinquent debts to FMS for collection and inclusion in TOP and certify that such debts qualify for collection by offset. Federal Management Service, http://www.fms.treas.gov/debt (last visited May 15, 2012).

with the regulations of the Secretary of Education and that he was never given "notice about an income contingent repayment plan." Plaintiff concluded with the demand that the Department recall and discharge his outstanding loans. (Admin. Rec. P. 12).

On September 26, 2008, the Department wrote to Plaintiff in response to his request for a hearing on his objections[3] to the offset of his tax returns. (Admin. Rec. P. 1). Elria Whitty, Hearing Official, informed Plaintiff that she had reviewed the documents provided by him and the information in the Department's electronic records regarding his account and determined that the evidence was insufficient to show that the debt was not owed; that UNIPAC was required to offer him an additional forbearance or that his account was improperly serviced by the loan holder.

On June 28, 2011, Plaintiff filed his Complaint *pro se and in forma pauperis* under the Administrative Procedure Act, 5 U.S.C. § 702, requesting review of the September 26, 2008, decision by the Department of Education Federal Student Aid

---

[3] "Your objection(s) to offset: (1) You believe this debt is not an enforceable debt because you were entitled to a forbearance or deferment; (2) You are concerned about the origination fee you paid and believe that the loan holder improperly serviced the account and that your account should not have been assigned to the Department; (3) You believe the Department should have offered you income contingent repayment terms." (Admin. Rec. P. 1).

office[4] that the Department finding Plaintiff's student loan debt to be legally enforceable.  (Docs. 1-2).  This action was originally filed in the Eastern District of Arkansas.  The Department moved to dismiss Plaintiff's claims because there are no facts that make venue appropriate in the Eastern District. (Doc. 8).  Plaintiff requested, in the interest of justice, that the Eastern District retain the case, or in the alternative that it be transferred to the Baltimore Division of the United States District Court for the District of Maryland.  (Doc. 9). On December 15, 2011, Judge Susan Webber Wright found that given Plaintiff's *pro se* status, transfer to the Western District of Arkansas[5], rather than dismissal, would best serve the interests of justice.  (Doc. 10).  The Department moved for Summary Judgment on the grounds that the administrative decision to refer Plaintiff to Treasury Offset was neither arbitrary, capricious nor an abuse of discretion.  (Doc. 18).

**II.  Standard of Review**

---

[4] The hearing official's decision is the final action of the Secretary of Education for the purposes of judicial review under the Administrative Procedure Act.  5 U.S.C.A. § 701, et. seq. See *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997)(explaining that agency action is "final," and thus subject to judicial review, when it "marks the consummation of the decisionmaking process" and "determines a party's rights or obligations").

[5] Plaintiff has resided in Mena, Arkansas (within the Western District), since at least 2004.  (Doc. 8).

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Best Buy Stores, L.P. v. Benderson Wainberg* Associates, 668 F.3d 1019, 1026 (8th Cir. 2012) (*quoting Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 416 (8th Cir. 2010)(*quoting* Fed.R.Civ.P. 56(c)(2)). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If the moving party meets the initial burden, the burden then shifts to the opposing party to produce evidence of the existence of a genuine issue for trial. *Id*. at 324.

A document filed *pro se* is to be liberally construed and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

### III. Discussion

In reviewing the decision of the hearing official's rejection of Plaintiff's claim, the Court inquires whether the "agency action, findings, and conclusions" are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

An agency action can be set aside as arbitrary and capricious if the agency: only relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Cent. S.D. Co-op Grazing Dist. v. Sec'y of United States Dep't of Agric.*, 266 F.3d 889, 894 (8th Cir. 2001) (*quoting Motor Vehicle Mfrs. Ass'n v. State Farm,* 463 U.S. 29, 43 (1983)). Moreover, "the standard of review is narrow and a court is not to substitute its judgment for that of the agency." *Id.,* at 895.

Accordingly, under this standard of review, agency decisions receive "a high degree of judicial deference."

*Missouri Limestone Producers Ass'n, Inc. v. Browner,* 165 F.3d 619, 621 (8th Cir. 1999) (quoting *Dubois v. Thomas,* 820 F.2d 943, 948-49 (8th Cir. 1987)). Utilizing this standard, a reasonable fact-finder could not conclude that the Department's decision was arbitrary and capricious. All the available evidence, namely the Administrative Record and the pleadings, lead to the conclusion that the Department made a reasonable decision that Plaintiff's debts were valid and enforceable, that he was ineligible for additional forbearance and that his account was not improperly serviced. Plaintiff does not dispute the fact that he took out the loans, nor does he allege any fraudulent conduct involved in the execution of the loan applications or promissory notes.

As the Court understands, Plaintiff contests the Department's decision to request the Treasury Department to offset his federal and/or state tax refunds and other payments because the hearing decision was "contrary to the facts in evidence & clearly erroneous*."*  (Doc. 16)(emphasis in the original).  For this proposition, Plaintiff refers twice in his Motion for Summary Judgment to Paragraph 3 of Page 2 of the Hearing Decision, which reads:  "The information you provided shows that UNIPAC Student Loan Center determined that you were ineligible for forbearance." (Admin. Rec. P. 2, ¶ 3).  In his rebuttal to the Department's Motion for Summary Judgment,

Plaintiff offers as evidence that he was eligible for forbearance the fact that the Department "stipulated for the record that 'forbearance' was in fact 'granted' to the Plaintiff on the grounds of 'financial hardship.'" (Doc. 21). Plaintiff is referring to Paragraph 3 of the Department's Statement of Material Facts: "Beginning on September 9, 1983, Plaintiff requested forbearance of his student loan payments, for the reason that he had been temporarily unemployed, and unable to make his monthly payments. Such was granted up until July 1, 1984)." (Doc. 20, ¶ 3).

Plaintiff is essentially arguing that because the Department granted him forbearance before, it was obligated to continue to do so until he advised them he was *not* suffering economic hardship; the Department is estopped from denying forbearance eligibility. While we are sympathetic with the Plaintiff, this argument is without merit. Under the Federal Family Education Loan and Federal Direct Student Loan Programs the lender may, but is not required, to grant forbearance upon properly documented written request. 34 C.F.R. § 682.211(a)(2). Furthermore, the lender must reasonably believe and document in the borrower's file that the borrower intends to repay the loan but, due to acceptable reasons, is currently unable to make scheduled payments. 34 C.F.R. § 682.211(a)(2)(i). When UNIPAC denied Plaintiff's last request for forbearance, the decision

maker noted that "Borr[ower] has shown no intent to repay loan...." (Doc. 2, Ex. I).

The Hearing Official noted that she reviewed the documents provided by Plaintiff and those maintained in the Department's records. In the absence of specific facts or evidence to suggest that the decision was arbitrary and capricious, Plaintiff's allegations are merely conclusory[6]. Because there is no evidence that the Department's decision was unreasonable, arbitrary or capricious, summary judgment is appropriate here.

**IV. Conclusion**

The Court concludes that there exists no basis to set aside the agency's decision. For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. 16) is **DENIED**, Defendant United States Department of Education's Motion for Summary Judgment (Doc. 18) is **GRANTED** and Plaintiff's complaint is dismissed without prejudice. All parties are to bear their own costs and fees.

---

[6]Plaintiff's lengthy Complaint distills into three main allegations: 1. The Department did not engage in default aversion activities under 20 U.S.C. § 1078; 2. The Department denied Plaintiff the opportunity to make an income contingent repayment plan; and 3. The Department erred in failing to cancel Plaintiff's debt because of his status as care-giver to his father. (Doc. 2).

IT IS SO ORDERED this 22nd day of June, 2012.

                                               <u>/s/ Robert T. Dawson</u>
                                               Honorable Robert T. Dawson
                                               United States District Judge